IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WILLIAM L. MURACO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV04-606-C-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM ORDER** |
| | ) | |
| ROBIN SANDY, MIKE H. | ) | |
| MATTHEWS, DEL RAY HOLM, | ) | |
| OLIVIA CRAVEN, STATE OF | ) | |
| IDAHO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in this case are the following: Plaintiff's Motion to Consider Deportation (Docket No. 24), Plaintiff's Motion for Appointment of Counsel (Docket No. 25), Plaintiff's Motion for Summary Judgment (Docket No. 32), Plaintiff's Motion to Compel Discovery (Docket No. 34), and Defendants' Motion for Summary Judgment (Docket No. 39).  Having reviewed the record, the Court concludes that oral argument on the Motions is unnecessary.  Having considered the Motions, Responses, and Replies, the Court enters the following Order.

## I.

## BACKGROUND

Plaintiff, an inmate, has or is entitled to dual citizenship in the United States and Canada.  He is presently incarcerated in Idaho for an Idaho conviction of lewd conduct with a minor, for which he was sentenced to a term of ten years fixed with life indeterminate.  He

**MEMORANDUM ORDER  1**

brings his civil rights claims against the members of the Idaho Commission of Pardons and Parole.   He alleges that he was granted a tentative parole date to Canada because he was scheduled to be deported upon his release.   Prior to parole release, the Immigration and Naturalization Service (INS) cancelled the deportation because they determined that Plaintiff had dual citizenship.   Plaintiff's parole was revoked, and Defendant Parole Commissioner Robin Sandy stated, "we don't want you to parole here."

In his Amended Complaint, Plaintiff alleges: (1) his right to a fair and impartial hearing as set forth in the Constitution was violated; (2) he was discriminated against because of his national origin; (3) that denial of parole constitutes a separation of powers violation; and (4) that he has been discriminated against because of the labeling of the type of crime he committed.

## II.

## PRELIMINARY MOTIONS

### A.    Motion to Consider Deportation (Docket No. 24)

Plaintiff requests that the Court issue an Order deporting him to Canada.  *See Motion to Consider Deportation* (Docket No. 24) and *Supplemental Prayer* (Docket No. 32-2).  The object of Plaintiff's request is to obtain an immediate or speedier release.  This type of relief is unavailable in a civil rights action.  *See Wilkinson v. Dotson*, 544 U.S. 74, 79, 82 (2005). Rather, the most Plaintiff can seek is invalidation of parole eligibility proceedings and request a new parole hearing.  *Id*. at 82.  In addition, Plaintiff must proceed through the proper channels of the Immigration and Naturalization Service (INS) for issues of

**MEMORANDUM ORDER  2**

deportation, rather than filing a motion in a civil rights case.  Finally, Plaintiff has provided

no evidence to rebut the INS determination that he is not deportable because he has or is

entitled to United States citizenship.  *See Detainer Cancellation* (Docket No. 35-5).  Based

on the foregoing, Plaintiff's Motion to Consider Deportation is denied.

**B.      Motion for Appointment of Counsel (Docket No. 25)**

In civil cases, counsel should be appointed only in "extraordinary cases."  *Wilborn v.*

*Escalderon*, 789 F.2d 1328, 1330 (9th Cir. 1986).  To determine whether extraordinary

circumstances exist, the court should evaluate two factors: (1) the likelihood of success on

the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light

of the complexity of legal issues involved.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir.

1991).  Neither factor is dispositive, and both must be evaluated together.  *Id.*

The Court presently concludes that Plaintiff has adequately articulated his claims, and

that the case is not meritorious.  As a result, the Court denies Plaintiff's Motion for

Appointment of Counsel.

**C.      Plaintiff's Motion to Compel Discovery (Docket No. 34)**

Plaintiff's Motion to Compel Discovery requests that the Commission be required to

provide the confidential psychological study that was part of the basis for the Commission's

decision to deny him parole.  Idaho Code § 9-340B(4)(c) prohibits records of the Parole

Commission from public disclosure because of the sensitive nature of the information

contained in the records.  The Idaho Court of Appeals has reasoned that because there is no

liberty interest in parole, inmates contesting parole decisions are not entitled to the records.

**MEMORANDUM ORDER  3**

*See Drennon v. Craven*, 105 P.3d 694, 696 (Idaho Ct. App. 2004).  While the Court at times

requires such items to be provided to the Court in camera to balance the need of the inmate

for the information and the interest of the government in confidentiality, here, it is not

necessary.  The decision of the Commission provides ample reason to satisfy a rational basis

test without the psychological evaluation.  As a result, the Court denies Plaintiff's Motion.

## III.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff asserts that he is entitled to summary judgment on his claim that the Idaho

Parole Commission members discriminated against him on the basis of national origin

because they withdrew their decision to parole him when they learned that he would not be

deported to Canada.  Defendants, on the other hand, argue that Plaintiff's claim is not one

that is permitted in a civil rights action, because the object of Plaintiff's case is to obtain

release on parole, not a new parole hearing.

**A.      Claim Construed as One Requesting Release on Parole**

In  *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the United States Supreme Court

addressed the issue of whether an inmate could challenge a parole denial via § 1983 rather

than habeas corpus.  The Court determined that an inmate may initiate a § 1983 action to

seek invalidation of "state procedures used to deny parole eligibility . . . and parole

suitability," but he may not seek "an injunction ordering his immediate or speedier release

into the community."  544 U.S. at 82.  At most, an inmate can seek as a remedy

**MEMORANDUM ORDER  4**

"consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant of parole. *Id.* The principles articulated by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), preclude an inmate from challenging the fact or duration of his confinement in a civil rights action. *Id.* at 486-87.

As Defendants point out, Plaintiff challenges the *result* of the parole process -- that he has been denied parole to the United States, rather than any *procedure* of the Commission. By comparison, in *Wilkinson v. Dotson*, the inmates brought an Ex Post Facto challenge regarding the Ohio Parole Board's *application of new guidelines* for parole consideration that were enacted after their convictions and were harsher than the ones in effect at the time of their convictions. 544 U.S. at 76-77. The Court agrees with Defendants' position that Plaintiff's claim is not one authorized by *Wilkinson v. Dotson*, but it is instead one that is barred by *Heck v. Humphrey*. Accordingly, Plaintiff is not entitled to summary judgment if his claim is construed as one requesting immediate or speedier release on parole as the result of an equal protection violation.

**MEMORANDUM ORDER  5**

**B.      Claim Construed as One Requesting a New Parole Hearing**

Alternatively, if Plaintiff's argument is merely that Defendants should be required to adopt a new procedure that requires them to consider inmates for parole without regard to national origin, it is not barred by *Heck v. Humphrey*.[1]  Under the Equal Protection Clause, "all persons similarly circumstanced shall be treated alike" by governmental entities.  *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).  However, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin,  or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution.  *See, e.g., City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 440 (1985).  The heightened standard of strict scrutiny requires the State to show that the classification is narrowly tailored to serve a compelling government interest.  *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

Where the inmate is not a member of a protected class, an equal protection claim is subject to the rational basis test.  *See McGinnis v. Royster*, 410 U.S. 263, 270 (1973)

---

[1] *See Jean v. Nelson*, 472 U.S. 846, 850 (1985) (Plaintiffs alleged that the policy of detaining without parole undocumented aliens who could not present a prima facie case for admission was unlawful because it was aimed at aliens from Haiti and Cuba; the court ordered a stay to permit the INS to promulgate a new rule prohibiting consideration of race or national origin in deciding whether an alien may be paroled).

**MEMORANDUM ORDER  6**

(applying rational basis test where state law denied certain state prisoners good-time credit toward parole eligibility for the period of their presentence county jail incarceration, whereas those released on bail prior to sentence received good-time credit for the entire period of their prison confinement). Under a rational basis inquiry, in order to prevail on an equal protection claim, Plaintiff must demonstrate that (1) he is similarly situated to others, (2) he is being treated worse than others to whom he is similarly situated, and (3) there is no rational basis for the disparate treatment. *More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993). Stated another way, prison officials need show only a rational basis for dissimilar treatment of other similarly-situated persons in order to defeat the merits of Plaintiff's claim. *Id.*, 984 F.2d at 271.

1.      National Origin Allegation

Plaintiff asserts an equal protection violation on the basis of national origin, but the facts of his case do not support such an allegation. In other words, he alleges that the Commission refused to parole him because he was Canadian. Plaintiff ignores the fact that the INS has concluded that Plaintiff is a dual Canadian-American citizen and that United States citizens cannot be deported. *See Detainer Cancellation* (Docket No. 35-5).

The actual facts of this case, therefore, do not support an equal protection claim. Rather, the facts show that the Commission would have, indeed, paroled him if he were of sole Canadian citizenship. An equal protection claim lies where others similarly situated to the complaining inmate are treated more *favorably* than that inmate, but no equal protection

**MEMORANDUM ORDER  7**

violation arises where the complaining inmate is treated more favorably than others because of his national origin.[2]

Alternatively, Plaintiff's national origin equal protection claim may be construed as a claim that the Commission has wrongly applied different standards to parole decisions for deportable inmates of a different national origin and *non*-deportable inmates of a different national origin.  Construed this way, the argument is that the Commission violates the Equal Protection Clause when it refuses to parole non-deportable inmates of a different national origin, and grants parole only if the inmate is deportable.

This might be a colorable claim under a different set of facts, but not for Plaintiff. Plaintiff has brought forward no admissible evidence to dispute the INS finding that Plaintiff has a claim to dual citizenship, and no argument to counter the INS conclusion that dual citizenship citizens cannot be deported.  Therefore, Plaintiff is not merely a non-deportable inmate of a different national origin, he is a non-deportable United States citizen.  His issue then becomes merely whether the Commission violated the Equal Protection Clause by refusing to parole him while granting parole to other non-deportable Americans or non-deportable dual-citizenship inmates.

Clearly, not all American inmates or all dual-citizenship inmates are similarly situated.

---

[2]  Plaintiff has not produced evidence to show that the Commission could parole him to Canada without deportation, but simply upon an agreement with Canada that it would supervise him and upon the condition that Plaintiff not re-enter the United States.  Since it is Plaintiff's burden to devise a workable parole plan, and he has not introduced such a plan to the Parole Commission, the Court concludes that Plaintiff has not produced facts showing that an equal protection argument can be based on a set of facts like these.

**MEMORANDUM ORDER  8**

For example, they can be lawfully distinguished by the types of crimes they have committed. *See Skinner v. State of Oklahoma ex rel. Williamson,* 316 U.S. 535, 540 (1942). Plaintiff has brought forward no evidence that, among the class of non-deportable dual-citizenship inmates, he is being treated differently. Neither has he shown that non-deportable dual-citizenship inmates have been treated differently for parole purposes than inmates of solely American citizenship. As a result, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted, because he has not shown that he is similarly situated to other inmates, nor has he shown that other similarly-situated inmates have been treated more favorably by the Commission.

Case law supports the concept that deportable alien inmates are not similarly situated to United States citizen aliens. Particularly, courts have held that it is not an equal protection violation to allow United States citizen inmates to participate in rehabilitative programs aimed at returning them to the United States after their incarceration and to deny that privilege to deportable inmates. These cases are not directly applicable to Plaintiff's case because he is not a deportable alien, but they are applicable by analogy to show that different treatment based on whether an inmate will be supervised and live within the United States has been held lawful.

For example, in *Santos v. United States*, 940 F.Supp. 275 (D. Hawaii 1996), the Court determined that the plaintiff had failed to state an equal protection claim "because deportable aliens are not 'similarly situated' to United States citizens." *Id*. at 281. The *Santos* court relied upon *United States v. Veloza*, 83 F.3d 380 (11th Cir.1996) (consequences of

**MEMORANDUM ORDER  9**

defendant's status as deportable alien did not warrant downward departure under sentencing guidelines), and *United States v. Mendoza-Lopez*, 7 F.3d 1483, 1486 (10th Cir. 1993) (allegedly "harsh consequences of imprisonment for deportable aliens" are not grounds for downward departure).[3]

2.      Rational Basis Test

Because, as discussed above, Plaintiff has no viable national origin equal protection claim on his set of facts, his claim is subject only to a rational basis inquiry.  Plaintiff's claim also fails at this second level of analysis.

In *Lizarrago-Lopez v. U.S.,* 89 F.Supp. 2d 1166, 1170 (D. Cal. 2000), where non-citizen inmates were not permitted to take part in home or community confinement programs, the court concluded that, under an equal protection analysis, legitimate policy interests provided adequate grounds to uphold differential treatment.  That court reasoned: "the United States has no policy interest whatsoever in facilitating the re-introduction of non-citizen convicts into foreign communities." *Id.* at 169.     Similarly, in this case, where an inmate can be paroled to a different country, the State of Idaho does not have to provide supervision and its citizens at large do not have to bear the consequences of having the parolee among them free from incarceration.

In *McLean v. Crabtree*, 173 F.3d 1176 (9th Cir. 1999), the plaintiffs argued that they

---

[3] *Veloza* was overruled on other grounds (minor role reduction in sentencing) by *U.S. v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc).  *Mendoza-Lopez* was overruled on other grounds (whether court has discretion to depart from the Sentencing Guidelines) by *U.S. v. Fagan*, 162 F.3d 1280 (10th Cir. 1998).

**MEMORANDUM ORDER  10**

were denied equal protection when prisoners with detainers were not eligible for a sentence reduction program because they could not participate in community-based treatment programs (a requirement of eligibility) *and* they were categorically excluded from the sentence reduction program.  *Id*. at 1180.  The Court concluded that the plaintiffs had "fail[ed] to show that the detainer exclusion, either on its face or in the manner of enforcement, result[ed] in aliens as a group being treated differently from other persons based on their membership in the class of incarcerated aliens." *Id*. at 1185.  Rather, the court determined that the statute at issue classified prisoners as those who had detainers lodged against them, and those who do not, and that there was a rational basis (increased flight risk) for the difference in treatment.  *Id*. at 1185-86.  Here, the fact that the State is relieved of supervising the deportable parolee and its citizens are relieved of the risk of having the parolee free from incarceration provides a rational basis for the different treatment of deportable and non-deportable parolees.

        3.      "Class of One" Equal Protection Theory

Even if the Court applies the "class of one" theory, Plaintiff's claim fails for lack of an adequate factual basis.  If a plaintiff has facts showing that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," then he may proceed under equal protection as a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express

**MEMORANDUM ORDER  11**

terms of a statute or by its improper execution through duly constituted agents." *Id*. at 564

(internal citation omitted).  In other words, prison officials need show only a rational basis

for dissimilar treatment in order to defeat the merits of such a claim.  *More v. Farrier*, 984

F.2d 269, 271 (8th Cir. 1993).

Here, there is a rational basis for the denial of Plaintiff's parole.  The Commission's

parole report voiding his tentative parole date shows that the parole hearing officer denied

the request for parole based on a poor parole plan if he were paroled to the United States, a

poor criminal history, and a lack of remorse for his crimes of sexual offenses against minor

children.  The Commission stated that it elected to "void the tentative parole date because the

Canadian detainer was cancelled, to deny parole and pass him to his full term release date.

It is noted that he is a repeat offender and poses a high risk." *Kubinski Affidavit exhibits*, at

p. 5-6 (Docket No. 35-5).  Plaintiff has not shown arbitrary treatment in the face of this

explanation.[4]

4.    Type of Crime as Basis for Equal Protection Claim

Plaintiff asserts that he was denied equal protection because the Commissioners

discriminated against him based upon the type of crime he committed -- a sex offense against

a minor child.  Keeping in perspective that Plaintiff can challenge only the procedures used

for parole consideration, this claim is without merit.

---

[4] The Court notes that this explanation is sufficient to show nonarbitrary treatment, or
that there is a rational basis for the parole denial, regardless of the content of the confidential
psychological report that Plaintiff seeks.

**MEMORANDUM ORDER  12**

The type of crimes that a person has committed plays an important role in whether that

person should be considered for parole.  Plaintiff, in essence, is asking that the parole

commission be prohibited from using one's crime to determine whether parole is appropriate.

There is no basis in law or fact for this claim.  The Supreme Court has stated that "a State is

not constrained in the exercise of its police power to ignore experience which marks a class

of offenders or a family of offenses for special treatment." *Skinner,* 316 U.S. at 540.  Rather,

the Equal Protection Clause is violated only where "the law lays an unequal hand on those

who have committed intrinsically the same quality of offense." *Id.* at 541.[5]

> 5.     New Parole Plan

Plaintiff also alleges in his Complaint that he later submitted a complete parole plan

to be paroled to Nevada, but that parole was again denied.  With this claim, Plaintiff has

---

[5]  While *Skinner* speaks to the State's legislative power, it is analogous to the state executive branch's power and discretion to parole, granted to it by the legislature. *See also Ughbanks v. Armstrong*, 208 U.S. 481 (1908), where the Supreme Court explained that the States have the power to exempt or limit certain types of crimes from parole eligibility:

> As the state is thus providing for the granting of a favor to a convicted criminal confined within one of its prisons [when it grants parole], it may (unless under extraordinary circumstances) attach such conditions to the application for or to the granting of the favor as it may deem proper, or it may, in its discretion, exclude such classes of persons from participation in the favor as may to it seem fit. If the state choose to grant this privilege to make application to the governor for a discharge upon parole in the case of one class of criminals and deny it to others, such, for instance, as those who have been twice convicted of a felony, it is a question of state policy exclusively for the state to decide, as is also the procedure to ascertain the fact, as well as the kind or amount of evidence upon which to base its determination. It is not bound to give the convict a hearing upon the question of prior conviction, and a failure to give it violates no provision of the Federal Constitution.

*Id.* at 487-88.

**MEMORANDUM ORDER  13**

pointed to no procedure that was unconstitutional, as procedural claims are the only type of civil rights parole claims authorized by *Wilkinson v. Dotson*. Such a claim is a substantive denial claim that must be brought in habeas corpus.

## C.    Conclusion

For all of the foregoing reasons, Plaintiff is not entitled to summary judgment. For the same reasons, Defendants are entitled to summary judgment on Plaintiff's claims addressed in his Motion for Summary Judgment.

## IV.

## Defendants' Motion for Summary Judgment

Defendants have also filed a Motion for Summary Judgment. The Court will now address Defendants' arguments that have not been covered by the foregoing discussion.

## A.    Lack of a Fair Hearing

Plaintiff asserts that his constitutional rights were violated because he was not afforded a fair hearing. The law is clear that there is no federal constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). An inmate can bring a procedural due process challenge to a parole decision only where there is a state-created liberty interest in parole. *See Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) (If a state statute governing parole uses mandatory language like "shall" to "create a presumption that parole release will be granted," then an inmate has a liberty interest in

**MEMORANDUM ORDER  14**

parole and may bring a procedural due process challenge to a parole decision.).  The

*Wilkinson v. Dotson* case does not address or supersede the liberty interest analysis but

merely identifies parole claims that are not barred by *Heck v. Humphrey*, 512 U.S. 477,

486-87 (1994).  *See Clark v. Traughber*, 2006 WL 721475 (D. Tenn. 2006).[6]   Therefore,

before an inmate may bring a due process claim arising from a parole denial, he must show

that there is a state-created liberty interest in parole.

In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court

addressed the liberty interest question.  The court noted that the Idaho sentencing statute, I.C.

§ 19-2513, uses the nonmandatory words "[t]he offender may be considered for parole or

discharge at any time during the indeterminate period of the sentence."[7]  The *Banks* Court

---

[6] The *Clark* court explained:

As Tennessee prisoners have no liberty interest in release on parole, they cannot
challenge the procedures used to deny parole (citations omitted).  The Supreme
Court's decision in *Wilkinson v. Dotson*, 544 U.S. 74, 125 S.Ct. 1242, 161
L.Ed.2d 253 (2005), does not alter this conclusion. The sole issue in *Wilkinson*
was whether inmates were required to bring their challenges to the
constitutionality of state parole procedures in habeas petitions or whether such
claims were cognizable in actions pursuant to 42 U.S.C. § 1983. The Supreme
Court held that state prisoners could bring challenges to state parole procedures
under 42 U.S.C. § 1983. The Supreme Court did not have occasion to consider the
merits of the plaintiffs' underlying claims and, in particular, the case did not
concern whether any state's laws created a liberty interest in parole. The decision
in *Wilkinson*, therefore, has not provided the plaintiff in this case with a viable
claim.
2006 WL 721475, at *3.

[7] I.C. § 19-2513 provides:
 Whenever any person is convicted of having committed a felony, the court shall,
unless it shall commute the sentence, suspend or withhold judgment and sentence
or grant probation, as provided in chapter 26, title 19, Idaho Code, or unless it
shall impose the death sentence as provided by law, sentence such offender to the
custody of the state board of correction. The court shall specify a minimum period

**MEMORANDUM ORDER  15**

held that, as a result of the statute's language, in Idaho "parole is not an automatic right or

liberty interest." *Id*. at 908.  The *Banks* Court acknowledged the existence of  I.C. § 20-223,[8]

which governs parole commission decisions  and contains the phrase "a parole shall be

ordered when. . . ."  However, the court apparently did not find the statute's "shall" language

controlling in the liberty interest analysis, although that section is nearly the same as the

language deemed mandatory in *Greenholtz* and *Allen.*   Rather, the Idaho Supreme Court

_____

of confinement and may specify a subsequent indeterminate period of custody.
The court shall set forth in its judgment and sentence the minimum period of
confinement and the subsequent indeterminate period, if any, provided, that the
aggregate sentence shall not exceed the maximum provided by law. During a
minimum term of confinement, the offender shall not be eligible for parole or
discharge or credit or reduction of sentence for good conduct except for
meritorious service except as provided in section 20-223(f), Idaho Code. The
offender may be considered for parole or discharge at any time during the
indeterminate period of the sentence and as provided in section 20-223(f), Idaho
Code.

[8]  Idaho Code § 20-223(c) provides:

Before considering the parole of any prisoner, the commission shall afford the
prisoner the opportunity to be interviewed by the commission, a commissioner or
other designated commission staff. A designated report prepared by commission
staff or a designated department of correction employee which is specifically to
be used by the commission in making a parole determination shall be exempt
from public disclosure; such reports contain information from the presentence
investigation report, medical or psychological information, victim information,
designated confidential witness information and criminal history information. A
parole shall be ordered when, in the discretion of the commission, it is in the best
interests of society, and the commission believes the prisoner is able and willing
to fulfill the obligations of a law-abiding citizen. Such determination shall not be
a reward of clemency and it shall not be considered to be a reduction of sentence
or a pardon. The commission may also by its rules, policies or procedures fix the
times and conditions under which any application denied may be reconsidered.
No action may be maintained against the commission and/or any of its members
in any court in connection with any decision taken by the commission to parole a
prisoner and neither the commission nor its members shall be liable in any way
for its action with respect thereto.

**MEMORANDUM ORDER  16**

relied on I.C. § 19-2513 – which governs sentencing – noting that it does not contain

mandatory language, but instead states that "[t]he offender *may* be considered for parole or

discharged at any time during the indeterminate part of the sentence."

The *Banks* decision governs Plaintiff's ability to bring a due process claim in a federal

civil rights action.  The *Sass* Court emphasized that "a State's highest court is the final

judicial arbiter of the meaning of state statutes."  461 F.3d at 1127.  Therefore, unless the

Idaho Supreme Court reconsiders its decision as to whether there is a liberty interest arising

from the sentencing and parole statutes, the federal courts are bound by the Idaho Supreme

Court's interpretation.  *Cf id.* ("if the California Supreme Court did hold that section 3041

does not use mandatory language, the [Ninth Circuit's] holdings to the contrary would no

longer control").  *See also Brandt v. State*, 878 P.2d 800, 804 (Idaho Ct. App. 1994) ("The

Commission's conduct in advising Brandt of a tentative release date created only a hope, not

a constitutionally protected expectancy.").

As a result of the foregoing, Plaintiff's claim that he did not receive a fair parole

hearing fails to state a claim upon which relief can be granted.  Therefore, Defendants are

entitled to summary judgment on this claim.

## B.     Separation of Powers

Plaintiff's separation of powers claim is a state law claim that the Court can entertain

under its supplemental jurisdiction powers. Such a claim arises when the parole commission,

a part of the executive branch of state government, allegedly makes a judicial determination

about the terms of imprisonment, thereby usurping the role of the courts.  This type of claim

**MEMORANDUM ORDER  17**

is not cognizable under § 1983 as a federal claim because the federal doctrine of separation

of powers does not extend to the states under the Fourteenth Amendment.  *See Hughes v.*

*Superior Court of Cal. in and for Contra Costa County*, 339 U.S. 460, 467 (1950).  The

question of whether a state agency violates the doctrine of separation of powers contained

in the Idaho Constitution is classified as a state claim.  *See Middleton v. Cupp*, 768 F.2d

1083, 1085 (9th Cir. 1985).

In his Amended Complaint, Plaintiff alleges as follows:

> The Parole Commission's passing to full term expiration is, in fact, extending the fixed term of incarceration intended by the sentencing judge. Therefore, the Idaho Parole Commission is assuming the authority of the judicial branch of the government; this they cannot assume.

*Amended Complaint*, at p. 2 (Docket No. 13).

Plaintiff's sentence is ten years fixed, with life indeterminate.  The Idaho Court of

Appeals has clarified that an indeterminate life sentence leaves open the possibility for

parole, but that parole is "merely a possibility, not an expectancy."  *State v. Nield*, 666 P.2d

1164, 1168 (Idaho Ct. App. 1983).  The possibility of parole, considered by the executive

branch's Parole Commission, is different and separate from the sentence, which was imposed

by the judicial branch.  The *Nield* Court explained; "whether the inmate is paroled or remains

confined will depend, in part, upon factors presented to the Commission [for Pardons and

Parole] which are outside the record on appeal from the sentence." *Id*.  The Idaho legislature

has given the Commission the "sole power to determine eligibility for parole."  *Mellinger v.*

*Idaho Dep't of Corr.*, 757 P.2d 1213 (Idaho Ct. App. 1988).  Therefore, the Commission is

**MEMORANDUM ORDER  18**

authorized to grant or deny parole to an inmate who has an indeterminate sentence, and its use of that authority does not work a state separation of powers violation. *See, e.g., Gibson v. Bennett*, 108 P.3d 417 (Idaho Ct. App. 2005) (rejecting a claim that the Parole Commission's decision to require a forfeiture of time spent on parole effectively resentenced the inmate in violation of the separation of powers doctrine).

## C.    Res Judicata

Defendants assert that they are entitled to res judicata because Plaintiff previously filed the unsuccessful state habeas corpus action based upon the same facts.  Res judicata bars (1) subsequent relitigation of an action, claim, or issue previously adjudicated, and (2) subsequent relitigation of any claims that might have been made.  *See Smith v. U.S.R.V. Properties, LC*, 118 P.3d 127, 131 (Idaho 2005)); *Maroun v. Wyreless Systems, Inc.*, 114 P.3d 974, 988 (Idaho 2005).

Here, because the parties have already litigated the claims in this action, and the Court has independently concluded that Defendants are entitled to summary judgment, the Court does not find it necessary to reach the res judicata defense.

## D.    Conclusion

Defendants have shown that they are entitled to summary judgment on Plaintiff's claims.  As a result, Plaintiff's Amended Complaint shall be dismissed with prejudice.

## V.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Consider

**MEMORANDUM ORDER  19**

Deportation (Docket No. 24) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Appointment of Counsel (Docket No. 25) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 32) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Compel Discovery (Docket No. 34) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket No. 39) is GRANTED.   Plaintiff's Complaint is DISMISSED with prejudice.

DATED:  **March 12, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER  20**